CHARLES CHIPMAN'S SONS COMPANY *v.* THOMAS, FIELD
& COMPANY

(No. 8303)

Submitted May 5, 1936.   Decided June 20, 1936.

*Payne, Minor, Ray, Maier & Davis,* for plaintiff in error.

*Hubbard & Hubbard,* for defendant in error.

LITZ, JUDGE:

This is an action by notice of motion for judgment in which the plaintiff, Charles Chipman's Sons, a corporation, seeks to recover $2,310.00 from the defendant, Thomas, Field & Company, a corporation, as the balance of the purchase price of 1320 dozen pairs of ladies' silk hose sold and delivered by the former to the latter. Plaintiff recovered judgment for the full amount of its claim, and defendant brings error.

Thomas, Field & Company is a wholesale dealer of textile products with its principal place of business in Charleston, West Virginia. Plaintiff is a selling agent of numerous textile mills (including the Rosedale Knitting Company of Reading, Pennsylvania), with its principal office in New York City.

By a written requisition of May 13th, defendant ordered from plaintiff 150 dozen pairs of Duponaise ladies' hose at $3.25 a dozen. Plaintiff accepted the offer May 15th, by mailing defendant written confirmation thereof, on which was stamped: "Also in addition to the prices stated herein the buyer agrees to pay the seller for any increased cost on all or any part hereof resulting from any federal or state legislation or regulation now or hereafter in force, and delivery schedule may be reduced in proportion to any limitation of production due to any federal and/or state law regulating same." On May 20th, defendant mailed plaintiff another order for 300 dozen pairs of the same style hose at $3.25 a dozen. By written confirmation dated May 22nd, and bearing the same stamped conditions, plaintiff accepted the offer for July delivery. By letter of May 22nd, defendant, through its buying agent, C. T. Bettinger, protested the conditions stamped on the confirmation of the order of May 13th for the 150 dozen pairs of hose in the following language: " * * * we object to the broad

clause statement you have on your acknowledgment, as while these goods are for at once and more than likely will get under any possible labor legislation, yet we are not accepting any merchandise orders at all with this red tape, which does not mean any merchandise bought at all. In other words, with this stamp on it, there is no obligation no price or no nothing else." Plaintiff, through its traveling salesman, Leonard Broseker, wrote defendant May 25, 1933, replying to the protest, as follows: "In regard to the clause on order confirmation— if you will let the writer know by return mail how many dozen I can cover you for, between now and September 1st at $3.25, I will see that you are taken care of. The mill is not accepting any business beyond June, but I have been able to get, just in my territory, a few accounts that I can take care of up until September. To avoid anything that may be objectionable to you on the order pad with the various explanations, let me know how many dozen I can cover you on open order for, and I will be glad to do so, and you can draw against same as you wish. This will protect you right on through." Defendant did not reply to this letter and on June 2nd, Broseker again wrote it that he was enclosing an open blanket order covering 1,000 dozen Duponaise hose to be shipped in July, August and September, and that he was looking forward to receiving a favorable reply by return mail. Again, defendant failed to reply. The 150 dozen pairs of hose ordered May 13th, having been delivered at the price stated in the order, Broseker, by letter dated June 13th, informed the defendant that federal legislation then pending would, if enacted into law, void all open orders at the old price, and suggested that defendant detail the entire order at least a part of which should be for at once shipment and that he would enter the detailed order at $3.25 per dozen. On June 17th, defendant sent plaintiff an order for 1020 dozen pairs of Duponaise hose at $3.25 per dozen on which appeared "Details on 1,000 dz. blanket order." This order was accepted by written confirmation, dated June 19th,

bearing the rubber stamp conditions. The Rosedale Mill, at which the particular hose were made, wrote defendant July 10th, that it was unable to state at what price level it would be able to deliver the merchandise as its employees were then on strike. From July 12th until July 25th, letters and telegrams passed between the parties; those on the part of defendant requesting shipment of order and those of plaintiff regretting the delay. In answer to one of defendant's letters, Broseker wired August 3rd, that the Rosedale Mill was still on strike; that he might be able to secure 200 dozen "finished on outsided at $5.00 per dozen; and suggested an immediate acceptance as the new price would be $5.75 per dozen. The strike at the Rosedale Mill having been settled, Broseker wrote defendant, August 23rd, quoting the adjusted price on the two orders totaling 1320 dozen at $5.00 per dozen, subject to the same stamped conditions, for September and October delivery. The letter urged acceptance of the price quoted. A few days later, Bettinger, while calling at the office of plaintiff in New York, refused to confirm the new price and upon his return to Charleston, by letter dated August 26th, expressed surprise to plaintiff at its demand for $5.00 per dozen, but offered to pay an increase of $.50 per dozen. Plaintiff promptly replied by letter stating that it had not shown any favoritism among its customers and that the offer of $.50 increase over the original price was not acceptable. The letter closed with the statement: "We sincerely hope you will permit us to reinstate your order." On September 13th, plaintiff wrote defendant: "It is necessary for me to have final information in reference to all of our unconfirmed orders not later than the first of next week—September 19th—so that we may intelligently advise our customers when their merchandise can be shipped to them. If we do not hear from you therefore, by that date, we will consider that you do not wish to reinstate your order and will consider same cancelled." Broseker wired defendant September 15th, urging immediate acceptance at the new price. On the next day,

defendant mailed plaintiff a detailed order for the 1020 dozen hose at $5.00 per dozen with the following notation: "This assortment to replace our order 6/17/33 No. 4897 Chipman order 13149. Price 3.25 plus Surcharge 1.75 dozen. This order is complete. If accepted, to be charged and shipped as shown thereon. Prices covering all taxes and charges of every kind." The shipment was to be at once. This order was followed by letter dated September 18th, requesting immediate confirmation and that the balance of the order (300 dozen) remain open. By letter of the same date, plaintiff acknowledged the order. On September 22nd, defendant expressed dissatisfaction at the increased price but later paid for all shipments received to November 1st, at $5.00 per dozen. Shipments of the entire order having been completed, on December 11th defendant mailed plaintiff a check for $1,740.00 in full of accounts on the basis of $3.25 per dozen pairs of hose. A letter accompanying the check stated that the hose had been bought May 10th and May 20th at $3.25 per dozen and referred to the communications of June 2nd, June 13th, June 17th and the acknowledgment of June 19th. Plaintiff returned the check December 14th, claiming the confirmed orders of September were at $5.00 per dozen. On May 15, 1934, defendant paid $1,740.00 plus $43.50 interest, leaving a balance claimed by plaintiff of $2,310.00, for which this action was instituted.

The testimony centers on the necessity of a confirmation by plaintiff of the order of June 17, 1933. E. B. Beachman, vice-president of plaintiff, testified that the letter of June 2, 1933, was a mere solicitation from its salesman, in no wise differing from an oral solicitation in Charleston, and was subject to confirmation by plaintiff; that the practice of the trade requires confirmation of all orders so that the seller may have opportunity to impose stipulations necessary to protect him against increased cost of production; and that an open order is an option extended to the purchaser to buy at a price subject to the condition on acceptance while an open blanket

order gives the buyer the right to take goods in stated periods.

C. L. Bettinger for the defendant testified that an acceptance within a reasonable time of an offer sent out from the seller's home office constitutes a binding contract according to trade practice; that no order blank was enclosed in the letter of June 2, 1933, and that the detailed order of June 17, 1933, was sent in response to the offer contained in the letter of June 2nd. These statements were corroborated by J. A. Field, president of the defendant company. Several experienced textile buyers from Charleston testified that the detailed reply of June 17, 1933, to the offer of June 2, 1933, constituted a binding contract according to the practices of the trade.

Beachman was permitted to testify that he had been advised during the trial by telephone from the New York office of plaintiff that a carbon copy of the alleged blanket order referred to in the letter from Broseker to defendant, dated June 2, 1933, was on file in the records of the office and contained the stamped conditions providing against increased costs.

The theory of the defense is that the 1320 dozen pairs of hose were sold unconditionally by plaintiff to defendant, in May and June, 1933, at $3.25 per dozen pairs, and that the subsequent promise of defendant to pay $5.00 per dozen pairs was without consideration, and therefore, unenforceable. It will be observed that the 1320 dozen pairs of hose included two orders: one for 300 dozen and the other for 1020 dozen. It does not appear whether the 300 dozen order was placed by defendant in acceptance of a specific offer by plaintiff. If the order was placed without a previous offer from the plaintiff, it would not have become binding until it had been accepted by written confirmation of plaintiff, dated May 22nd, which contained the stamped conditions providing against increased costs. As already indicated, the principal evidence related to the question as to whether the 1020-dozen order became a binding contract

June 17th, when it was mailed by defendant to the plaintiff, or did not become so until it had been accepted by the written confirmation of plaintiff, dated June 19, 1933, which contained the stamped conditions protecting the seller against increased cost of production. The plaintiff contends that the order was not binding until it had been confirmed on June 19th; first, because the letter of June 2nd contained an open blanket order bearing the stamped conditions protecting the seller against increased cost of production; second, for the reason that the letter was written by the traveling salesman of plaintiff upon his own responsibility, and therefore, amounted to no more than a solicitation on his part for an order from defendant; and third, because the agreement of defendant to pay $5.00 per dozen pairs for the hose should be treated as a valid compromise or settlement between the parties. Defendant insists that the letter of Broseker to it dated June 2, 1933, constituted a valid offer on behalf of plaintiff which became a binding contract upon the mailing by the offeree of the detailed order of June 17, 1933. Assuming that the letter of June 2nd constituted an offer by defendant, which we think involves an issue of fact, the further issue of fact as to whether the original price was conditional depends upon proof that the letter was accompanied by an open blanket order qualifying the price stated. The jury should consider the weight to be given to the letter from Broseker to defendant dated May 25, 1933, in determining whether or not the merchandise in question was originally sold by plaintiff to defendant at a fixed price. The hearsay testimony of the witness, Beachman, upon the latter issue was plainly inadmissible. We cannot accept the theory of plaintiff, that the agreement of defendant to pay the increased price should be treated as a valid compromise or settlement between the parties for the reason that the plaintiff was selling to other customers at the same price; and the adjusted price was determined solely on the basis of cost of production. The plaintiff made no concessions, but fixed the new price according to its contention as to the terms of the original contract.

Because of the admission of the hearsay statement of Beachman, the judgment is reversed, the verdict set aside and a new trial awarded.

*Reversed and remanded.*